UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANTHONY GIOIA,

              Plaintiff,

                                             **DECISION AND ORDER**
v.                                             14-CV-1395 (WFK)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
-----------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

      Plaintiff Anthony Gioia ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) alleging Carolyn W. Colvin, the Commissioner of Social Security ("Commissioner"), improperly denied Plaintiff's request for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits. The Commissioner filed a motion for judgment on the pleadings requesting an order affirming the Commissioner's decision and dismissing the action. Dkt. 18 ("Commissioner's Motion"). Plaintiff filed a cross-motion for judgment on the pleadings requesting the Court vacate the Commissioner's decision and remand this action for a new administrative hearing. Dkt. 20 ("Plaintiff's Motion"). For the reasons that follow, the Commissioner's motion is DENIED, and Plaintiff's motion is GRANTED. The case is REMANDED for a new administrative hearing.

## BACKGROUND AND PROCEDURAL HISTORY

      Plaintiff was born on April 3, 1983. *See* Dkt. 23 (Administrative Record) ("R.") at 142. Plaintiff has completed a GED and was in special education in school. *Id.* at 381. From 2001 to 2007, Plaintiff worked as a "checker" for a shipping company, punching numbers onto shipping containers. *Id.* at 58. From 2010 to 2011, Plaintiff had a "temp job" working eight hours a day as an unspecified laborer. *Id.* at 167.

      In his June 21, 2012, applications to the Social Security Administration ("SSA") for SSD and SSI benefits, Plaintiff stated he became unable to work due to a disabling condition beginning on June 2, 2011. *Id.* at 142-149. Plaintiff claims he is eligible for benefits due to bipolar disorder, attention deficit hyperactivity disorder, anxiety, suicidal behavior, depression,

social phobia, and post-traumatic stress disorder since his sister's death. *Id.* at 166, 175. Plaintiff states he has panic attacks on multiple occasions per day, each attack lasting for about two to three hours, during which he starts "shaking uncontrollably." *Id.* at 62-63. Plaintiff requires medication during those attacks. *Id.* at 63. Being around people triggers the panic attacks, as does the receipt of bad news and going over the Verrazano-Narrows Bridge. *Id.* Plaintiff reports having made approximately three or four suicide attempts and reports he still has suicidal thoughts. *Id.* at 63-64. Additionally, Plaintiff has difficulty sleeping, and reports sometimes being unable to sleep for three days. *Id.* at 64. Plaintiff also claims he needs to be reminded of daily tasks such as showering and laundry, and cannot cook anymore because turning the gas stove on and using the microwave make him too nervous. *Id.* at 64-65. Plaintiff was hospitalized in 2011 for a week for attempting suicide by drinking Drano, and underwent prior psychiatric hospitalizations in 2008 and 2006. *Id.* at 380.

Plaintiff filed an application for SSD benefits under Titles II and XVIII of the Social Security Act (the "Act") on June 2, 2011. *Id.* at 142-43. The claim was initially denied on September 17, 2012. *Id.* at 74-75. Plaintiff thereafter requested a hearing before the Administrative Law Judge ("ALJ"), which was held on February 21, 2013 before ALJ Hilton Miller ("the ALJ"). *Id.* at 51-71. Plaintiff was represented by counsel. *Id.* at 53-54. At that hearing, Plaintiff's counsel stated Plaintiff suffered from "frequent panic attacks, paranoid thinking, social phobia, has an aversion to being around people, claustrophobia," "has a number of attempted suicides[,]" "occasionally will hear some voices," suffers from "depression" that renders him "non-functioning" for "prolonged periods of time," and "needs prompting to do things like get out of bed, shower, and things of that nature." *Id.* at 54. On March 7, 2013, the ALJ issued a decision finding Plaintiff was not disabled. *Id.* at 23-33. The Appeals Council

denied Plaintiff's request for review on August 21, 2013. *Id.* at 4-5. This denial became the Commissioner's final act.

## DISCUSSION

### I. Standard of Review

When a claimant challenges the SSA's denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (citing *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)); *Moran*, 569 F.3d at 112. The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

It is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of*

*Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 268-269 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation marks omitted) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). To fulfill this burden, the ALJ must "adequately explain his reasoning in making the findings on which his ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

## II. Determination of Disability and Parties' Cross-Motions

### A. Applicable Law

For purposes of both SSD and SSI benefits, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairments in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. §§ 404.1520, 416.920. *See, e.g., Rosa*, 168 F.3d at 77. The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* First, the Commissioner must determine whether claimant is engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on her RFC, work experience, age, and education. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Furthermore, "[a]n ALJ is required to give controlling weight to the medical opinion of a claimant's treating physician when that opinion: (1) concerns the nature and severity of an impairment; (2) is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (3) is not inconsistent with other substantial evidence in the record." *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) (internal citations omitted). In deciding what

and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. §§ 404.1520, 416.920. *See, e.g., Rosa*, 168 F.3d at 77. The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* First, the Commissioner must determine whether claimant is engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on her RFC, work experience, age, and education. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Furthermore, "[a]n ALJ is required to give controlling weight to the medical opinion of a claimant's treating physician when that opinion: (1) concerns the nature and severity of an impairment; (2) is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (3) is not inconsistent with other substantial evidence in the record." *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) (internal citations omitted). In deciding what

and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. §§ 404.1520, 416.920. *See, e.g., Rosa*, 168 F.3d at 77. The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* First, the Commissioner must determine whether claimant is engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on her RFC, work experience, age, and education. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Furthermore, "[a]n ALJ is required to give controlling weight to the medical opinion of a claimant's treating physician when that opinion: (1) concerns the nature and severity of an impairment; (2) is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (3) is not inconsistent with other substantial evidence in the record." *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) (internal citations omitted). In deciding what

weight to accord medical opinions not given controlling weight, the ALJ must consider "(i) the frequency of the examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Drogo v. Colvin*, 13-CV-946, 2015 WL 4041732, at *7 (N.D.N.Y. July 1, 2015) (Suddaby, J.) (internal quotation marks and citations omitted). Remand is appropriate where an ALJ fails to provide good reasons for the weight given to the treating physician's medical opinion. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

**B. The ALJ's Decision**

On March 7, 2013, the ALJ issued his decision denying Plaintiff's application for SSD and SSI benefits. R. at 23-33. The ALJ followed the five-step procedure to evaluate Plaintiff's claim and found: (1) Plaintiff had not engaged in substantial gainful activity since June 2, 2011, the alleged onset date; (2) Plaintiff had severe impairments of an affective disorder, an anxiety disorder, attention deficit hyperactivity disorder, bipolar disorder, a history of learning disorder, methadone dependence, and a substance abuse disorder; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had the RFC to perform a full range of work at all exertional levels with certain non-exertional limitations; and (5) considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 28, 30, 32.

In determining Plaintiff had the RFC to perform work at all exertional levels, the ALJ considered Plaintiff's testimony, but did not find Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms . . . entirely credible" because of Plaintiff's

history of substance abuse and arrests. *Id.* at 30-31. The ALJ also considered (1) the report by Dr. Richard King after a one-time consultative examination on August 3, 2012, and (2) the report of August 4, 2012 by Plaintiff's treating physician, psychiatrist Dr. Leonie Johnson-Sena. *Id.* at 31, 54-55, 380-82, 383-97. The ALJ did not cite or expressly consider the report of state psychological consultant Dr. R. Lopez. *Id.* at 31, 398-415.

Dr. King "opined . . . [Plaintiff] has a fair ability to follow simple instructions and perform simple tasks, and a guarded capacity to follow complex instructions, perform complex tasks, and interact with coworkers in a work setting." *Id.* at 31, 380-82. The ALJ gave Dr. King's opinion "great weight" because Dr. King's opinion "is consistent with the results of the consultative examination" performed by Dr. King himself. *Id.* at 31, 380.

Dr. Johnson-Sena completed a psychiatric report on August 4, 2012, in which she stated Plaintiff's diagnoses were "[p]anic disorder," "ADHD," "mood disorder," and "bipolar disorder." *Id.* at 387. Dr. Johnson-Sena stated she saw Plaintiff first in June 2003 after the death of his sister, and noted he was not "consistent with treatment" between 2003 and 2012 when she was treating him. *Id.* at 386. However, Dr. Johnson-Sena noted she saw Plaintiff "monthly" from February 18, 2012 through August 4, 2012. *Id.* Dr. Johnson-Sena found that in both 2003 and 2012, Plaintiff exhibited "persistent panic attacks" (described as "severe" as well as "persistent" in 2012), and in 2012 he exhibited a "heightened level of anxiety" and "sleeplessness," restricting his "ability to tolerate being outside in public." *Id.* Dr. Johnson-Sena further noted Plaintiff's "inability to focus and concentrate" and "inability to sit still." *Id.* Dr. Johnson-Sena prescribed for Plaintiff, among other medications, 2 milligrams of Alprazolam twice a day for panic attacks, 25 milligrams of Seroquel to stabilize his mood and address insomnia, and 100 milligrams of Gabapentin to stabilize his mood and address his anxiety. *Id.* at

387, 390. Regarding Plaintiff's ability to function in a work setting, Dr. Johnson-Sena wrote, "[Plaintiff] is severely claustrophobic. He is [u]nab[le] to tolerate being in closed office. Anxiety working in settings in which he has to remain seated." *Id.* at 391. Dr. Johnson-Sena further stated Plaintiff's ability to sit is "limited" and he becomes "very agitated" if he has to sit in an enclosed space, his understanding and memory are "limited" because he "has borderline intellectual functioning," his sustained concentration and persistence are "limited" because of his "severe" problems with inattention, his capacity for social interaction is "limited" because of his panic attacks and mood disorder, and his ability to adapt is "limited" because of "severe recurrent panic attacks" and "reactivity of mood." *Id.* at 392-94.

The ALJ gave "[l]ittle weight" to Dr. Johnson-Sena's medical opinion, because Dr. Johnson-Sena's "opinion is unaccompanied by treatment notes and is not supported by the clinical observations of Dr. King or other treatment notes in the record." *Id.* at 31. Accordingly, after giving "great weight" to Dr. King's report, "little weight" to Dr. Johnson-Sena's, and discounting Plaintiff's credibility, the ALJ concluded that Plaintiff could perform work at all exertional levels. *Id.* at 31. After finding jobs existed in significant numbers in the national economy that Plaintiff can perform given his age, education, work experience, and RFC, the ALJ concluded Plaintiff had not been under a disability as defined by the Act from June 2, 2011 to March 7, 2013, the date of the ALJ's decision. *Id.* at 32-33.

Plaintiff filed Dr. Johnson-Sena's treatment notes with his request for review to the Appeals Council; however, the Appeals Council denied his request nonetheless because it found the treatment notes did not provide a basis for changing the ALJ's decision. Plaintiff's Motion at 8; R. at 4-5, 429-78.

## C. The Parties' Cross-Motions

On July 21, 2015, the parties filed cross-motions for judgment on the pleadings. *See* Commissioner's Motion; Plaintiff's Motion; Dkt. 21 ("Commissioner's Reply"). The Commissioner argues the Court should affirm the ALJ's decision because substantial evidence, including Dr. King's report and the report of state psychological consultant Dr. R. Lopez, supports the ALJ's finding that Plaintiff's mental health problems do not prevent him from doing work at all exertional levels. Commissioner's Motion at 14-19. Plaintiff argues the Court should vacate and remand the ALJ's decision because (1) the ALJ did not follow the treating physician rule; (2) the ALJ himself was responsible for the initial lack of treatment notes from Dr. Johnson-Sena; (3) the ALJ gave Dr. King's opinion too much weight; and (4) the Appeals Council improperly ignored Dr. Johnson-Sena's treatment notes. Plaintiff's Motion at 14-20. The Commissioner argues in response (1) the ALJ did all he was required to do in order to obtain Dr. Johnson-Sena's treatment notes; and (2) the Appeals Council considered Dr. Johnson-Sena's treatment notes and found it did not provide a basis to overturn the ALJ's decision. Commissioner's Reply at 2-4.

For the reasons set forth below, the Court finds the ALJ and the Appeals Council incorrectly failed to adequately develop and consider the record, and accordingly REMANDS the case for further administrative proceedings consistent with this opinion.

### III. Analysis - The ALJ and Appeals Council Failed to Adequately Develop and Consider the Record.

To determine whether an ALJ's decision should be remanded for further administrative proceedings, the Court must examine whether substantial evidence exists to support the ALJ's RFC finding that Plaintiff can engage in work at all exertional levels. *See Butts*, 388 F.3d at 384. As discussed above, "[a]n ALJ is required to give controlling weight to the medical opinion of a claimant's treating physician when that opinion: (1) concerns the nature and severity of an impairment; (2) is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (3) is not inconsistent with other substantial evidence in the record." *Meadors*, 370 F. App'x at 182 (2d Cir. 2010) (internal citations omitted).

Here, Dr. Johnson-Sena, a psychiatric specialist who had treated Plaintiff occasionally since 2003 and regularly since February 18, 2012, found in her report of August 4, 2012 that Plaintiff's ability to sit still, concentrate, socially interact, and adapt to new situations were limited because of his panic attacks, mood disorder, and attention deficit hyperactivity disorder. R. at 387-94. Dr. Johnson-Sena further noted she had prescribed medications including Alprazolam, Seroquel, and Gabapentin to attempt to address these problems. R. 387, 390. However, the ALJ discounted her opinion in favor of the August 3, 2012 report by Dr. King, who only examined Plaintiff once, and indicated no awareness of (1) Plaintiff's prescriptions for Alprazolam or Gabapentin, (2) Plaintiff's panic attacks, or (3) Plaintiff's diagnosis of attention deficit hyperactivity disorder. *Id.* at 380-82.

Additionally, while the ALJ did not cite the opinion of psychological consultant Dr. Lopez, the Commissioner cites Dr. Lopez's opinion as supporting the ALJ's finding.

Commissioner's Motion at 15-16. However, Dr. Lopez also examined Plaintiff only once, on August 3, 2012, and was not Plaintiff's treating physician. *Id.* at 398-415.

The ALJ's reason for disregarding Dr. Johnson-Sena's opinion was that her "opinion is unaccompanied by treatment notes and is not supported by the clinic observations of Dr. King or other treatment notes in the record." *Id.* at 31. Plaintiff argues the ALJ was responsible for securing the treatment notes supporting Dr. Johnson-Sena's August 4, 2012 report. Plaintiff's Motion at 17. The Commissioner contends that the amended regulations as of March 26, 2012 do not explicitly require the ALJ to re-contact medical sources for clarification or supplementary information, and only require the ALJ to make "an initial request for medical evidence and one follow-up request." Commissioner's Reply at 2-3. The Commissioner further argues the ALJ met his burden by sending two requests. *Id.* at 3.

Plaintiff is correct. The Commissioner claims an initial request to Dr. Johnson-Sena was sent on June 28, 2012, and another on July 19, 2012. *Id.*; R. at 383-84, 385. However, the alleged request on July 19, 2012 is not a request for information *from* Dr. Johnson-Sena, but is actually an authorization to *release* the consultative examination report by the New York State Office of Temporary and Disability Assistance *to* Dr. Johnson-Sena. R. at 383-84. Therefore, the ALJ failed to meet the standard the Commissioner concedes is applicable.

Further, the Commissioner provides no evidence of attempts to secure treatment notes *after* receipt of the August 4, 2012 report. After receiving the administrative record, the ALJ believed it contained a gap: the lack of treatment notes to support Dr. Johnson-Sena's report. R. at 31. If, after initial receipt of the record, an ALJ believes it contains a gap, then even under the amended regulations effective March 26, 2012, courts in the Second Circuit have held the ALJ has an affirmative duty to further develop the record. *See, e.g., Merriman v. Comm'r*, 14-CV-

—11—

3510, 2015 WL 5472934, at *1-2 (S.D.N.Y. Sept. 16, 2015) (Gardephe, J.) (internal citations omitted) (finding ALJ had affirmative duty to develop record by seeking further information from physicians where treatment notes were incomplete regarding plaintiff's elbow problem and mental illness); *Vazquez v. Comm'r*, 14-CV-6900, 2015 WL 4562978, at *16-17 (S.D.N.Y. July 21, 2015) (Francis, Mag. J.) (internal citations omitted) (finding ALJ had affirmative duty to develop record by seeking further information from physician where ALJ felt physician's statement required clarification); *Garcia v. Colvin*, 12-CV-2140, 2014 WL 119433, at *7 (E.D.N.Y. Jan. 10, 2014) (Garaufis, J.) (finding clear gap in record triggered ALJ's affirmative duty to develop record where ALJ found there was "no evidence" regarding whether the plaintiff had a "worsening condition"). Accordingly, the ALJ failed to develop the record sufficiently to justify his decision.

Furthermore, the Appeals Council erred when, upon receipt of Dr. Johnson-Sena's treatment notes, it found the new information "does not provide a basis for changing the [ALJ's] decision." R. at 5. The Commissioner defends the Appeals Council on the ground that Dr. Johnson-Sena's treatment notes "did not contain new information about [Plaintiff's] condition." Commissioner's Reply at 3. However, the treatment notes do contain *support* for Dr. Johnson-Sena's opinion, such as contemporaneous records of prescriptions and observations of symptoms. R. at 430-36. The ALJ cited the lack of such support as his strongest reason for discounting Dr. Johnson-Sena's opinion. *Id.* at 31. The only other specific reason the ALJ cited for discounting Dr. Johnson-Sena's opinion was the contradictory opinion of Dr. King, a one-time consultative examiner. *Id.* at 31. As such, the existence of the treatment notes is a significant factor that could provide a basis for changing the ALJ's decision.

Accordingly, the Court finds the ALJ failed to develop the record sufficiently to justify his disposition, and the Appeals Council failed to adequately consider Dr. Johnson-Sena's treatment notes. The Court hereby REMANDS the case for further development of the record, evaluation of Dr. Johnson-Sena's treatment notes, and other proceedings as needed, consistent with this opinion and pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## CONCLUSION

For the reasons stated herein, the Commissioner's motion for judgment on the pleadings, Dk. 16, is hereby DENIED, and Plaintiff's cross-motion for judgment on the pleadings, Dkt. 20, is hereby GRANTED. The Court hereby REMANDS this action to the Social Security Administration for further administrative proceedings consistent with this opinion and pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk of Court is respectfully instructed to close this case.

**SO ORDERED.**
s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December __/__, 2015
Brooklyn, New York